# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.1.1
### Eastern Division

True Religion Apparel, Inc., et al.

                     Plaintiff,

v.                                  Case No.: 1:12–cv–09894

                                  Honorable Sharon Johnson Coleman

Does 1–100

                     Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, February 4, 2013:

       MINUTE entry before Honorable Sharon Johnson Coleman: Status hearing held on 2/4/2013. Motion hearing held on 2/4/2013. Plaintiffs' motion for entry of default and for default judgment [38] is granted. Judgment is entered in favor of plaintiffs and against all defendants. Enter Final Judgment Order. Plaintiff's motion to seal Schedule C as attached to the proposed Final Judgment Order [39] is granted. Civil case terminated. Mailed notice(rth, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

1.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| TRUE RELIGION APPAREL, INC. and GURU DENIM, INC., | ) ) ) | Case No. 12-cv-9894 |
| Plaintiffs, | ) ) | **Judge Sharon Johnson Coleman** |
| v. | ) ) | **Magistrate Judge Sidney I. Schenkier** |
| DOES 1-100 d/b/a the aliases identified on Schedule "A", | ) ) ) |  |
| Defendants. | ) ) ) |  |

## FINAL JUDGMENT ORDER

This action having been commenced by Plaintiffs True Religion Apparel, Inc. and Guru Denim, Inc. (together, "True Religion") against the Defendants identified in Schedule A to the Complaint and using the Defendant Domain Names;

This Court having entered upon a showing by True Religion, a temporary restraining order and preliminary injunction against Defendants which included a domain name transfer order and asset restraining order;

True Religion having properly completed service of process on Defendants; the combination of providing notice via electronic publication and email, along with any notice that Defendants received from domain name registrars and payment processors, being notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and affording them the opportunity to present their objections; and

None of the Defendants having answered the Complaint or appeared in any way, and the time

for answering the Complaint having expired;

THIS COURT HEREBY FINDS that Defendants are liable for federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), cyberpiracy (15 U.S.C. § 1125(d)) and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.).

IT IS HEREBY ORDERED that Plaintiffs' Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defendants are deemed in default and that this Final Judgment is entered against Defendants.

IT IS FURTHER ORDERED that:

1.  Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

    a.  using True Religion's TRUE RELIGION Trademarks or any reproduction, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine True Religion product or not authorized by True Religion to be sold in connection with True Religion's TRUE RELIGION Trademarks;

    b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine TRUE RELIGION product or any other product produced by True Religion, that is not True Religion's or not produced under the authorization, control or supervision of True Religion and approved by True Religion for sale under True Religion's TRUE RELIGION Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of True Religion, or are sponsored or approved by, or connected with True Religion;

d. further infringing True Religion's TRUE RELIGION Trademarks and damaging True Religion's goodwill;

e. otherwise competing unfairly with True Religion in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for True Religion, nor authorized by True Religion to be sold or offered for sale, and which bear True Religion's TRUE RELIGION Trademarks or any reproduction, counterfeit copy or colorable imitation thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit TRUE RELIGION products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any product that is not a genuine TRUE RELIGION product or not authorized by True Religion to be sold in connection with True Religion's TRUE RELIGION Trademarks.

2. The Defendant Domain Names are permanently transferred to True Religion's control. The domain name registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within five (5) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of

True Religion's selection, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to True Religion's account at a registrar of True Religion's selection.

3.      Those in privity with Defendants and with notice of the injunction, including any Internet search engines, web hosts, domain-name registrars and domain name registries that are provided with notice of the injunction, shall cease facilitating access to any and all websites through which Defendants engage in the sale of counterfeit and infringing goods using the TRUE RELIGION Trademarks.

4.      Pursuant to 15 U.S.C. § 1117(c)(2), True Religion is awarded statutory damages from each of the Defendants in the amount of two million dollars ($2,000,000) for willful use of a counterfeit TRUE RELIGION Trademark on products sold through at least the Defendant Domain Names for a total award in the amount of two hundred million dollars ($200,000,000);

5.      Any banks, savings and loan associations, payment processors, PayPal or other financial institutions, for any Defendant or any of Defendants' websites shall within two (2) business days of receipt of this Order:

   a.   Locate all accounts connected to Defendants, Defendants' Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts connected to the email addresses listed in Schedule C hereto;

   b.   Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

6.      All monies currently restrained in Defendants' financial accounts, including monies held by PayPal, Inc. ("PayPal"), are hereby released to True Religion as partial payment of the above-identified damages, and PayPal is ordered to release to True Religion the amounts from Defendants' PayPal accounts within ten (10) business days of receipt of this Order.

7.      Until True Religion has recovered full payment of monies owed to it by any Defendant, True Religion shall have the ongoing authority to serve this Order on any banks, savings and loan associations, or other financial institutions including, without limitation, PayPal, (collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defendants are identified. Upon receipt of this Order, the Financial Service Providers shall immediately:

   a.   Locate all accounts connected to Defendants, Defendants' Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts; and

   b.   Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets, and any funds in such accounts shall be transferred to True Religion within ten (10) business days of receipt of this Order.

8.      In the event that True Religion identifies any additional domain names or financial accounts owned by Defendants, True Religion may send notice of any supplemental proceeding to Defendants by email at the email addresses identified in Schedule A to the Complaint.

9.      The ten thousand dollar ($10,000) bond including any interest minus the registry fee is hereby released to True Religion.

This is a Final Judgment.

DATED: February 6, 2013

Sharon Johnson Coleman

U.S. District Court Judge

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 10 | **DATE** | 10/14/2011 |
| **CASE TITLE** | Deckers Outdoor Corporation vs. Does 1 - 55 | | |

**DOCKET ENTRY TEXT**

For the reasons stated in the attached memorandum opinion and order, Deckers' motion for entry of default and motion for entry of a default judgment is granted in its entirety [58]. Enter Memorandum Opinion and Order. Civil case closed.

■ [ For further detail see separate order(s).]

Docketing to mail notices.
*Mail AO 450 form.

| | Courtroom Deputy Initials: | MF |
|---|---|---|
| U.S. DISTRICT COURT | | |

FILED-EDI

2011 OCT 17 AM 6:16

11C10 Deckers Outdoor Corporation vs. Does 1 - 55

Page 1 of 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DECKERS OUTDOOR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 10 |
| | ) | |
| DOES 1-55 d/b/a the aliases identified on | ) | Judge John W. Darrah |
| Schedule A and DOES 56-500, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Deckers Outdoor Corporation's ("Deckers") Motion for Entry

of Default and Entry of Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) against

Defendants, Does 1-55 d/b/a the aliases identified on Schedule A to Deckers' Amended

Complaint (collectively, "the Defendants") based on Deckers' action for trademark

infringement and counterfeiting.

Deckers is known as a source of high quality footwear products, including the

UGG® (the "UGG Trademark") brand of premium sheepskin footwear.

Deckers filed this action on January 3, 2011, alleging federal trademark

infringement and counterfeiting (Count I), false designation of origin (Count II),

cyberpiracy (Count III) and violation of the Illinois Uniform Trade Practices Act

(Count IV), and seeks statutory damages and injunctive relief. (Dkt. No. 5.) On the same

day, Deckers filed an *ex parte* application for entry of a temporary restraining order and

preliminary injunction. (Dkt. No. 49.) The Court granted Deckers' motion for a

temporary restraining order on February 3, 2011 (*see* Dkt. No. 26), and converted the

temporary restraining order to a preliminary injunction on March 8, 2011 (*see* Dkt. No. 37).

On May 24, 2011, the Court denied Deckers' Motion for Entry of Default Judgment on the basis that Deckers had not established that the Court has personal jurisdiction over Does 1-55, consistent with the requirements recently set forth by the Seventh Circuit in *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011). (*See* Dkt. No. 50.)

Deckers filed an Amended Complaint on August 17, 2011. (Dkt. No. 56.) Deckers included newly discovered domain names linked to websites operated by Defendants and added new allegations relating to Defendants' illegal activities that were directed toward Illinois. (*See id.*) The Amended Complaint was served electronically on all Defendants on August 17, 2011. (*Id.*) None of the Defendants has entered an appearance or otherwise defended this action since being notified of this Action in February 2011. The time for responding to the Amended Complaint expired on August 31, 2011, pursuant to Fed. R. Civ. P. 15(a)(3).

In its Motion for Default Judgment pursuant to Rule 55(b)(2), Deckers seeks the entry of an Order, finding that each of the Defendants are liable on all counts of Deckers' Amended Complaint. Deckers further seeks an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the 49 Defendants[1] in the amount of up to $2,000,000 per Defendant for use of a counterfeit UGG Trademark on products sold through each of the 271 Defendant Domain Names. Deckers also seeks an award of statutory damages pursuant to 15 U.S.C. §1117(d) of up

---

[1] Each unique registrant e-mail address is counted as a separate Defendant. The Defendant Domain Names identified are registered using 49 unique email addresses.

2

to \$100,000 for each of the 140 Defendant Domain Names that incorporate Deckers'
UGG Trademark. Deckers further seeks entry of a permanent injunction, prohibiting
Defendants from selling products containing counterfeit UGG Trademarks, an order that
domain names used by Defendants to sell products containing counterfeit UGG
trademarks be permanently transferred to Deckers, and that all assets in Defendants'
financial accounts operated by PayPal, Inc. ("PayPal") be transferred to Deckers,
including the approximately \$130,617 identified by Deckers.

## ANALYSIS

### *Entry of Default and Default Judgment*

Deckers has met its burden of making a *prima facie* case for personal jurisdiction
over Defendants. *See uBID, Inc. v. GoDaddy Group Inc.*, 623 F.3d 421, 423 (7th Cir.
2010); *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007).
Because Defendants have chosen not to appear or produce any evidence regarding their
illegal activities in Illinois, the allegations in the Amended Complaint, which must be
accepted as true, establish a *prima facie* case for personal jurisdiction against each
Defendant. (*See* Am. Compl. ¶¶ 2, 4, 8, 9 and 11-17.) *See Purdue Research Found. v.
Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a
plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are
accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Deckers has pled that each of the Defendants has targeted and solicited sales from
Illinois residents by operating English language websites that offer shipping to Illinois,
has accepted payment in U.S. dollars, and has sold counterfeit UGG products to residents
of Illinois. *See The Gen. Council of the Assemblies of God v. The Ranger Supply Store,*

3

*Inc. et al.*, No. 10 C 07050 (N.D. Ill. June 29, 2011) (entering default judgment against defendants who sold counterfeit products to Illinois residents through an Internet website) (*General Council*).

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P 55(a). "Although Rule 55(a) . . . refers to entry of default by the clerk, it is well-established that a default also may be entered by the court." *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982). When motion is made to the court for entry of a default, the decision to enter default lies within the district court's discretion. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993).

The Defendants were properly served on August 17, 2011. (*See* Dkt. No. 60, Gaudio Decl. at ¶ 15, Ex. 14). Despite having been served with process, the Defendants have ignored these proceedings and failed to plead or otherwise defend this action. (*Id.* at ¶ 16). Therefore, Deckers has met the requirements for entry of default against the Defendants pursuant to Rule 55(a).

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that Defendants are liable to Plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the Complaint – except those relating to damages – are taken as true and may not be challenged and the

defendants are liable as a matter of law as to each cause of action alleged in the complaint. Fed. R. Civ. P. 8(b)(6); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

Deckers has therefore shown the following:

1. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Deckers' investigation has shown that Defendants have set up fully interactive commercial Internet websites, operating under the 271 domain names, which are identified in Schedule A attached to Deckers' Amended Complaint and Schedule B attached to Deckers' Memorandum in Support of its Motion for Default Judgment, Docket Number 64 (collectively, the "Defendant Domain Names"). (Am. Compl. ¶ 2.) Through these Domain Names, Defendants have targeted and solicited sales from Illinois residents by operating English language websites that offer shipping to Illinois, have accepted payment in U.S. dollars and, on Deckers' information and belief, have sold counterfeit UGG products to residents of Illinois. (*Id.*) Each of the Defendants is committing tortuous acts in Illinois, is engaging in interstate commerce and has wrongfully caused Deckers substantial injury in the State of Illinois. (*Id.*)

3. Deckers is famous throughout the United States and elsewhere as a source of high quality footwear products, including the UGG® brand of premium sheepskin footwear. (*Id.* ¶ 4.) Deckers' UGG products are distributed and sold to consumers through retailers throughout the United States, including through over 100 authorized retailers in Illinois, the uggaustralia.com website, and UGG

5

Concept Stores, including a Concept Store located at 909 North Rush Street in Chicago, Illinois. (*Id.*)

4.      Since acquiring the UGG Trademark and the goodwill of the business in 1995, Deckers has continuously sold footwear and clothing under the UGG Trademark. (*Id.* ¶ 5.) Deckers has built substantial goodwill in the UGG Trademark and the UGG Trademark, is famous and a valuable asset of Deckers. (*Id.*)

5.      Deckers holds registrations for the UGG Trademark (and stylized variations) in more than 100 countries around the world, including U.S. Trademark Registration No. 3,050,925. (*Id.* ¶ 6.) The UGG Trademark has been used continuously since as early as 1979 by Deckers and its predecessors in interest. (*Id.*) The registration is valid and subsisting. (*Id.*)

6.      The UGG Trademark is distinctive when applied to high quality apparel, footwear and related merchandise, signifying to the purchaser that the products come from Deckers and are manufactured to the highest quality standards. (*Id.* ¶ 7.) Whether Deckers manufactures the products itself or licenses others to do it, Deckers has insured that products bearing its trademarks are manufactured to the highest quality standards. (*Id.*) Deckers' products branded under the UGG Trademark have been widely accepted by the public and are enormously popular, as demonstrated by hundreds of millions of dollars in sales each year. (*Id.*) The UGG Trademark is a famous mark. (*Id.*)

7.      Defendants are unknown individuals and business entities who, upon the information and belief of Deckers, reside in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement legal systems.

6

(*Id.* ¶ 8.) Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites operating under the Defendant Domain Names. (*Id.*)

8.      Defendants are directly and personally contributing to, inducing, and engaging in the sale of counterfeit products bearing UGG Trademarks. (*Id.* ¶ 9.) The counterfeit products for sale on the Defendant Domain Names bear similar irregularities and indicia of being counterfeit to one another, indicating that the counterfeit products were manufactured by and come from a common source and that Defendants are interrelated. (*Id.*) In addition, the websites linked to Defendant Domain Names include multiple similarities, such as the same page layout, text, and copyright protected images copied from Deckers' uggaustralia.com website. (*Id.*)

9.      Defendants are liable on all counts of Deckers' Amended Complaint, specifically for trademark infringement (*see* Dkt. No. 56 at ¶¶ 18-24); false designation of origin (*id.* at ¶¶ 25-29); cybersquatting (*id.* at ¶¶ 30-35); and violation of the Illinois Deceptive Trades Practices Act (*id.* ¶¶ 36-29).

*Statutory Damages*

As set forth above, Defendants are liable for violations of the Lanham Act. Consequently, Deckers first moves for statutory damages pursuant 15 U.S.C. § 1117(c)(2), for willful trademark counterfeiting against each of the 49 Defendants in the amount of up to $2,000,000 per Defendant for use of a counterfeit UGG Trademark, pursuant to 15 U.S.C. § 1117(d).

7

The Lanham Act allows a plaintiff to elect, at any time before final judgment is rendered, one of two alternative recovery options for trademark infringement: (1) the actual damages caused by the infringement, 15 U.S.C. § 1117(a); or (2) statutory damages, 15 U.S.C. § 1117(c). Courts commonly find statutory damages appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed. *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874 (S.D. Ohio 2007); *Chanel, Inc. v. French*, No. 05-61838, 2006 WL 3826780, *2 (S.D. Fla. Dec. 27, 2006); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004); *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 123 (S.D.N.Y. 2003); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003); *Sara Lee Corp. v. Bags of New York*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999).

Section 1117(c)(1) allows statutory damages of "not less than $1,000 and no more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). "If the court finds that the use of the counterfeit mark was willful," Section 1117(c)(2) allows a statutory damages award of up to $2,000,000 per counterfeit mark. 15 U.S.C. § 1117(c)(2).

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S&M Cent. Service Corp.*, No. 03 C 4986, 2004 WL 2534378, *7 (N.D. Ill. Nov. 8, 2004) (*Lorillard Tobacco Co.*). As such, knowledge need not be proven directly but can be inferred from a defendant's conduct. *Id.* Willful infringement may be shown by the fact that the "defendant ignored

8

the plaintiff's notices[,] did not seek advice of an attorney, and passed the matter off as a nuisance." *Id.*

Deckers has sufficiently demonstrated that Defendants' use of the UGG Trademark was willful. (*See* Am. Compl. ¶¶ 9, 12.) Under circumstance similar to those presented here, in *General Council*, the district court deemed defendants' use of plaintiff's trademark willful where the defendants were in default. (*See* 6/29/11 Order, Dkt. No. 47, *General Council*, No. 10-cv-7050.) *See also Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

While § 1117(c) sets out a dollar range for possible statutory damage awards, the statute does not provide guidance on how to select a damage figure within that range. Courts assessing statutory damages under § 1117(c) have looked to case law applying the statutory damage provision of the Copyright Act, 17 U.S.C. § 504(c), for guidance. *See Lorillard Tobacco Co.*, 2004 WL 2534378 at *4. Addressing 17 U.S.C. § 504(c) in *Chi Boy Music v. Charlie Club.*, 930 F.2d 1229 (7th Cir. 1991) (*Chi-Boy Music*), the Seventh Circuit held that a court awarding statutory damages is "not required to follow any rigid formula but instead enjoys wide discretion."

An award of statutory damages serves dual interests in that it is remedial in nature but also intended to protect an important public interest. *Sands, Taylor & Wood v. The Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994). As such, the remedy imposed under statute must provide sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Id.* Statutory damages are appropriate to "penalize the infringer and deter future violations" when the infringement is willful. *Lorillard Tobacco Co.*, 2004 WL 2534378 at *4 (quoting *Chi Boy Music*, 930 at 1230).

9

Deckers requests an award up to the maximum statutory damages award authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the 49 Defendants in the amount of $2,000,000 per Defendant, which totals $98,000,000. Elsewhere in its Motion, Deckers notes that this case is "virtually identical to the facts" in *General Council* (Mem. at 11), which involved a non-Illinois trademark owner suing non-Illinois based Defendants for selling counterfeit products to Illinois residents over an Internet website.

In *General Council*, the district court entered an order for default judgment on the plaintiff's claims, among them trademark infringement and copyright infringement. In its motion for default judgment, plaintiff requested $2,000,000 per counterfeit mark. Holding that defendants' use of the trademark was willful, the court awarded $750,000 per infringing use of counterfeit marks. Based on the similarities between the cases, such a statutory award is reasonable and will be applied here. Plaintiff is awarded $750,000 against each of the 49 Defendants for use of a counterfeit UGG Trademark, for a total of $36,750,000.

Second, Deckers moves for statutory damages pursuant to 15 U.S.C. § 1117(d) on the grounds that Defendants violated Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). 15 U.S.C. § 1117(d) provides that:

> In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

Deckers requests statutory damages of up to $100,000 for each of the 140 Defendant Domain Names that incorporate Deckers' UGG Trademark.

10

An award of $50,000 per domain name, for each of the 140 Defendant Domain Names that incorporate Deckers' UGG Trademark, for a total of $7,000,000, is reasonable and consistent with *General Council*, which, as discussed above, involved similar circumstances. (*See* 6/29/11 Order, Dkt. No. 47, *General Council*, No. 10-cv-7050 (awarding $50,000 per domain name under 15 U.S.C. § 1117(d) where plaintiff requested $100,000 per domain name).)

## CONCLUSION

It is hereby ordered that Deckers' Motion for Entry of Default and Motion for Entry of a Default Judgment is granted in its entirety and that Defendants, d/b/a the aliases identified on Schedule A to Deckers' Amended Complaint are deemed in default; and this Final Judgment is entered against Defendants.

It is further ordered:

1.      Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   a.      using Deckers' UGG Trademark or any reproductions, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademark;

11

b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine UGG branded product or any other product produced by Deckers, that are not Deckers' or not produced under the authorization, control or supervision of Deckers and approved by Deckers for sale under Deckers' UGG Trademark;

c.     committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Deckers, or sponsored or approved by, or connected with Deckers;

d.     further infringing Deckers' UGG Trademark and damaging Deckers' goodwill;

e.     otherwise competing unfairly with Deckers in any manner;

f.     shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Deckers, nor authorized by Deckers to be sold or offered for sale, and which bear any Deckers' UGG Trademark or any reproductions, counterfeit copy or colorable imitation thereof;

g.     using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit UGG products; and

h.     operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademark.

2.     The registrars and registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc. and the Public Interest Registry are required to:

a.     prevent the Defendant Domain Names from linking to corresponding counterfeit websites; and

b.     at Deckers' election, transfer to Deckers' control or cancel the Defendant Domain Names and any other domain names owned by Defendants, including any domain names registered using the registrant email addresses listed below, that have been identified as being used to engage in their counterfeiting of the UGG Trademark.

3.     Those in privity with Defendants and those with notice of the injunction, including any Internet search engines, web hosts, domain-name registrars and domain name registries that are provided with notice of the injunction, cease facilitating access to any and all websites through which Defendants engage in the sale of counterfeit and infringing goods using the UGG Trademark;

13

4.      That pursuant to 15 U.S.C. § 1117(c)(2), Deckers is awarded statutory damages from each of the 49 Defendants in the amount of seven-hundred-fifty-thousand dollars ($750,000) for use of a counterfeit UGG Trademark on products sold through at least the Defendant Domain Names, for a total award in the amount of thirty-six million seven-hundred-fifty thousand dollars ( $36,750,000).

5.      That pursuant to 15 U.S.C. § 1117(d), Deckers is awarded statutory damages for each the 140 Defendant Domain Names that incorporate the UGG Trademark in the amount of fifty thousand dollars ($50,000), for a total award in the amount of seven million dollars ($7,000,000).

6.      That pursuant to 15 U.S.C. § 1117(a), Deckers is awarded reasonable attorney's fees.

7.      That all monies currently restrained in Defendants' financial accounts, including monies held by PayPal, are hereby released to Deckers as partial payment of the above-identified damages; and PayPal is ordered to release to Deckers said amounts from Defendants' PayPal accounts within ten (10) business days of receipt of this Order.

Date: __10·14-11__


_____
JOHN W. DARRAH
United States District Court Judge

14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| OAKLEY, INC. | ) |
|  | ) |
| Plaintiff, | ) Case No. 12-cv-9864 |
|  | ) |
| v. | ) **Judge Robert M. Dow, Jr.** |
|  | ) |
| DOES 1-100 d/b/a the aliases identified on | ) **Magistrate Judge Jeffrey Cole** |
| Schedule "A", | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## FINAL JUDGMENT ORDER

This action having been commenced by Plaintiff Oakley, Inc. ("Oakley") against the

Defendants identified in Schedule A to the Complaint and using the Defendant Domain Names

and Online Marketplace Accounts;

This Court having entered upon a showing by Oakley, a temporary restraining order and

preliminary injunction against Defendants which included a domain name transfer order and

asset restraining order;

Oakley having properly completed service of process on Defendants; the combination of

providing notice via electronic publication and email, along with any notice that Defendants

received from domain name registrars and payment processors, being notice reasonably

calculated under all circumstances to apprise Defendants of the pendency of the action and

affording them the opportunity to present their objections; and

None of the Defendants having answered the Complaint or appeared in any way, and the

time for answering the Complaint having expired;

1

THIS COURT HEREBY FINDS that Defendants are liable for federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), cyberpiracy (15 U.S.C. § 1125(d)) and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.).

IT IS HEREBY ORDERED that Plaintiff's Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defendants are deemed in default and that this Final Judgment is entered against Defendants.

IT IS FURTHER ORDERED that:

1.  Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

    a.  using Oakley's OAKLEY Trademarks or any reproduction, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Oakley product or not authorized by Oakley to be sold in connection with Oakley's OAKLEY Trademarks;

    b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine OAKLEY product or any other product produced by Oakley, that is not Oakley's or not produced under the authorization, control or supervision of Oakley and approved by Oakley for sale under Oakley's OAKLEY Trademarks;

    c.  committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Oakley, or are sponsored or approved by, or connected with Oakley;

    d. further infringing Oakley's OAKLEY Trademarks and damaging Oakley's goodwill;

    e. otherwise competing unfairly with Oakley in any manner;

    f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Oakley, nor authorized by Oakley to be sold or offered for sale, and which bear Oakley's OAKLEY Trademarks or any reproduction, counterfeit copy or colorable imitation thereof;

    g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit OAKLEY products; and

    h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any product that is not a genuine OAKLEY product or not authorized by Oakley to be sold in connection with Oakley's OAKLEY Trademarks.

2.     The Defendant Domain Names are permanently transferred to Oakley's control. The domain name registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within five (5) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Oakley's selection, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to Oakley's account at a registrar of Oakley's selection.

3.   Those in privity with Defendants and with notice of the injunction, including any Internet search engines, web hosts, domain-name registrars and domain name registries that are provided with notice of the injunction, shall cease facilitating access to any and all websites through which Defendants engage in the sale of counterfeit and infringing goods using the OAKLEY Trademarks.

4.   Pursuant to 15 U.S.C. § 1117(c)(2), Oakley is awarded statutory damages from each of the Defendants in the amount of two million dollars ($2,000,000) for willful use of a counterfeit OAKLEY Trademark on products sold through at least the Defendant Domain Names for a total award in the amount of two hundred million dollars ($200,000,000);

5.   Any banks, savings and loan associations, payment processors, PayPal or other financial institutions, for any Defendant or any of Defendants' websites shall within two (2) business days of receipt of this Order:

   a.   Locate all accounts connected to Defendants, Defendants' Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts connected to the email addresses listed in Schedule B hereto;

   b.   Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

6.   All monies currently restrained in Defendants' financial accounts, including monies held by PayPal, Inc. ("PayPal"), are hereby released to Oakley as partial payment of the above-identified damages, and PayPal is ordered to release to Oakley the amounts from Defendants' PayPal accounts within ten (10) business days of receipt of this Order.

7.   Until Oakley has recovered full payment of monies owed to it by any Defendant, Oakley shall have the ongoing authority to serve this Order on any banks, savings and loan

associations, or other financial institutions including, without limitation, PayPal, (collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defendants are identified. Upon receipt of this Order, the Financial Service Providers shall immediately:

    a. Locate all accounts connected to Defendants, Defendants' Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts connected to the email addresses listed in Schedule B hereto; and

    b. Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets, and any funds in such accounts shall be transferred to Oakley within ten (10) business days of receipt of this Order.

8.    In the event that Oakley identifies any additional domain names or financial accounts owned by Defendants, Oakley may send notice of any supplemental proceeding to Defendants by email at the email addresses identified in Schedule A to the Complaint.

9.    The ten thousand dollar ($10,000) bond including any interest minus the registry fee is hereby released to Oakley.

This is a Final Judgment.

DATED: January 30, 2013

_____
U.S. District Court Judge Robert M. Dow

*garb*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| COACH, INC. and COACH SERVICES, INC., | : |
| | : |
| Plaintiffs, | :     **Case No. 1:12-cv-1514** |
| | : |
| v. | :     **Judge Robert M. Dow, Jr.** |
| | : |
| DOES 1 through 573 d/b/a the aliases identified | :     **Magistrate Jeffrey T. Gilbert** |
| on Schedule "A", | : |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ORDER AND JUDGMENT

This action having been commenced by Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively, "Coach") against Defendants identified in the Complaint and Schedule "A" attached herewith, and using at least the domain names identified in Schedule A attached herewith (the "Defendant Domain Names");

Coach having properly completed service of process on Defendants and none of the Defendants having answer the Complaint or appeared in any way, and the time for answering or otherwise responding to the Complaint having expired, it is hereby **ORDERED AND ADJUDGED:**

Defendants are liable for federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designations of origin (15 U.S.C. § 1125(a)), cybersquatting (15 U.S.C. § 1125(d)), and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510).

**IT IS FURTHER ORDERED AND ADJUDGED** that:

1.      Coach's Motion for Entry of Default and Entry of Default Judgment is GRANTED in its entirety and that Defendants are deemed in default and this Final Judgment is entered against Defendants.

2.      A Permanent Injunction is entered against Defendants pursuant to Fed. R. Civ. P. 65, forever enjoining these Defendants, their agents, servants, and employees, and upon those persons in active concert or participation with them:

    a.      From manufacturing, procuring, distributing, shipping, retailing, selling, advertising, or trafficking in any merchandise, including apparel, sunglasses, bags, jewelry and/or related merchandise, not authorized by Coach, bearing unauthorized simulations, reproductions, counterfeits, copies or colorable imitations of Coach's Trademarks, or bearing a design or image which is of a substantially similar appearance to Coach's Trademarks. Specifically, those Trademarks as listed below:

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,088,706 | COACH | 6, 9, 16, 18, 20 and 25 for *inter alia* key fobs, eyeglass cases, satchels, tags for luggage, luggage, backpacks, picture frames, hats, gloves and caps. | September 19, 1997 | COACH |
| 3,157,972 | COACH | 35 for retail store services. | October 17, 2006 | COACH |
| 0,751,493 | COACH | 16, 18 for *inter alia* leather goods, wallets and billfolds. | June 23, 1963 | COACH |
| 2,451,168 | COACH | 9 for *inter alia* eyeglasses and sunglass Cases | May 15, 2001 | COACH |

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,537,004 | COACH | 24 for *inter alia* home furnishings. | February 5, 2002 | COACH |
| 1,846,801 | COACH | 25 for *inter alia* men's and women's coats and jackets. | July 26, 1994 | COACH |
| 3,439,871 | COACH | 18 for *inter alia* umbrellas. | June 3, 2008 | COACH |
| 2,061,826 | COACH | 12 for *inter alia* seat covers. | May 13, 1997 | COACH |
| 2,231,001 | COACH | 25 for *inter alia* men and women's clothing. | March 9, 1999 | COACH |
| 2,836,172 | COACH | 14 for *inter alia* sporting goods and stuffed toys. | April 27, 2004 | COACH |
| 2,939,127 | COACH | 9 for *inter alia* camera cases. | April 12, 2005 | COACH |
| 3,354,448 | COACH | 14 for *inter alia* jewelry. | December 11, 2007 | COACH |
| 2,579,358 | COACH | 20 for *inter alia* pillows, mirrors and glassware. | June 6, 2002 | COACH |
| 2,074,972 | COACH | 3, 21 for *inter alia* leather cleaning products and shoe brushes. | July 1, 1997 | COACH |
| 2,446,607 | COACH | 16 for *inter alia* writing instruments. | April 24, 2001 | COACH |
| 2,291,341 | COACH | 14 for *inter alia* clocks and watches. | November 9, 1999 | COACH |
| 1,071,000 | COACH | 18, 25 for *inter alia* women's handbags. | August 9, 1977 | COACH |
| 3,633,302 | COACH | 3 for *inter alia* perfumes, lotions and body sprays. | June 2, 2009 | COACH |
| 2,534,429 | COACH & LOZENGE DESIGN | 9 for *inter alia* eyeglasses, eyeglass frames and sunglasses. | January 29, 2002 | COACH |

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 3,363,873 | COACH & LOZENGE DESIGN | 3 for *inter alia* fragrances. | January 1, 2008 |  |
| 2,252,847 | COACH & LOZENGE DESIGN | 35 retail services. | June 15, 1999 |  |
| 2,291,368 | COACH & LOZENGE DESIGN | 14 for *inter alia* jewelry. | November 9, 1999 |  |
| 2,666,744 | COACH & LOZENGE DESIGN | 24 for *inter alia* bed linens. | December 24, 2002 |  |
| 2,534,429 | COACH & LOZENGE DESIGN | 9 for *inter alia* eyeglasses, eyeglass frames and sunglasses. | January 29, 2002 |  |
| 2,169,808 | COACH & LOZENGE DESIGN | 25 for *inter alia* clothing for men and women. | June 30, 1998 |  |
| 2,045,676 | COACH & LOZENGE DESIGN | 6, 9, 16, 18, 20, 25 for *inter alia* key fobs, money clips, phone cases, attaché cases, duffel bags, picture frames, hats, caps and gloves. | March 18, 1997 |  |
| 1,070,999 | COACH & LOZENGE DESIGN | 18, 25 for *inter alia* women's handbags. | August 9, 1977 |  |
| 1,309,779 | COACH & LOZENGE DESIGN | 9, 16, 18 for *inter alia* eyeglass cases and leather goods such as wallets, handbags and shoulder bags. | December 19, 1984 |  |
| 2,035,056 | COACH & LOZENGE DESIGN | 3, 21 for *inter alia* leather cleaning products and shoe brushes. | February 4, 1997 |  |

4

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,983,654 | COACH & LOZENGE DESIGN | 18, 24, 25 for *inter alia* handbags, leather goods, fabrics, swimwear, hats and shoes. | August 9, 2005 | |
| 2,626,565 | CC & DESIGN (Signature C) | 18 for *inter alia* handbags, purses, clutches, shoulder bags, tote bags, and wallets. | September 24, 2002 | |
| 2,822,318 | CC & DESIGN (Signature C) | 24 for *inter alia* fabric for use in the manufacture of clothing, shoes, handbags, and luggage. | March 16, 2004 | |
| 2,832,589 | CC & DESIGN (Signature C) | 14, 16, 18, 20, 24, 25, 4, 6, 9 for *inter alia* sunglasses and eye glass cases, leather goods, | April 13, 2004 | |
| 2,832,740 | CC & DESIGN (Signature C) | 28 for *inter alia* stuffed animals. | April 13, 2004 | |
| 2,592,963 | CC & DESIGN (Signature C) | 25 for *inter alia* clothing. | July 9, 2002 | |
| 2,822,629 | CC & DESIGN (Signature C) | 35 for retail services for *inter alia* handbags, small leather goods, jewelry and watches. | March 16, 2004 | |
| 3,012,585 | AMENDED CC & DESIGN (Signature C) | 18, 24, 25 for *inter alia* handbags, purses, fabrics and clothing. | November 8, 2005 | |
| 3,396,554 | AMENDED CC & DESIGN (Signature C) | 3 for *inter alia* fragrances. | March 11, 2008 | |

5

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 3,696,470 | COACH OP ART & Design | 18, 24 and 25 for *inter alia* bags, umbrellas, shoes and the manufacture of these goods. | October 13, 2009 | |
| 3,251,315 | COACH EST. 1941 | 18, 25 for *inter alia* handbags, small leather goods, jackets and coats. | June 12, 2007 | |
| 3,413,536 | COACH EST. 1941 STYLIZED | 14, 18, 25 for *inter alia* handbags, purses, shoulder bags, tote bags, and wallets. | April 15, 2008 | |
| 3,441,671 | COACH LEATHERWARE EST. 1941 [Heritage Logo] | 9, 14, 18, 25 for *inter alia* handbags, leather cases, purses, and wallets. | June 3, 2008 | |
| 3,072,459 | CL STYLIZED | 18 for *inter alia* leather goods. | March 28, 2006 | |
| 3,187,894 | CL STYLIZED | 18, 25 for *inter alia* leather goods and clothing. | December 12, 2006 | |
| 1,664,527 | THE COACH FACTORY STORE & LOZENGE DESIGN | 42 for *inter alia* retail services for leather ware. | November 12, 1991 | |
| 3,338,048 | COACH STYLIZED | 18 for *inter alia* luggage, backpacks and shoulder bags | November 11, 2007 | |
| 3,149,330 | C & LOZENGE LOGO | 9, 14, 16, 25 for *inter alia* desk accessories, clothing and eye glasses. | September 26, 2006 | |
| 2,162,303 | COACH & TAG DESIGN | 25 for *inter alia* clothing. | June 2, 1998 | |

6

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,088,707 | COACH & TAG DESIGN | 18 for *inter alia* accessory cases, backpacks and satchels. | August 19, 1997 |  |

      b.     From passing off, inducing or enabling others to sell or pass off, as authentic products produced by Coach or otherwise authorized by Coach, any product not manufactured by Coach or produced under the control or supervision of Coach and approved by Coach, which utilize any of Coach's Trademarks listed in the above chart;

      c.     From committing any act calculated to cause purchasers to believe that products sold by Defendants, their agents, servants, and employees, and upon those persons in active concert or participation with them are sold under the control and supervision of Coach, or are sponsored, approved or guaranteed by Coach, or are connected with and produced under the control or supervision of Coach;

      d.     From further diluting and infringing Coach's Trademarks and damaging its goodwill;

      e.     From engaging in any other activity constituting unfair competition with Coach or that will cause the distinctiveness of Coach's Trademarks to be diluted; and

      f.     From using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit Coach products;

      g.     From operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution,

advertising, offering for sale, or sale of any product that is not a genuine Coach product or not authorized by Coach to be sold in connection with Coach's Trademarks; and

      f.      From causing, aiding, and/or abetting any other person from doing any act proscribed under a through g above;

3.      The domain name registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc., and the Public Interest Registry, within ten (10) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Coach's selection, and that the domain name registrars take any and all steps necessary to transfer the Defendant Domain Names to a registrar of Coach's selection;

4.      Those in privity with Defendants and with notice of the injunction, including any Internet search engines, web hosts, domain name registrars and domain name registries that are provided with notice of the injunction, cease facilitating access to any and all websites through which Defendants engage in the sale of counterfeit and infringing goods using Coach's Trademarks;

5.      Pursuant to 15 U.S.C.§ 1117(c)(2), Coach is awarded statutory damages from each of the Defendants in the amount of two million dollars ($2,000,000) for use a counterfeit Coach Trademark on products sold through at least the Defendant Domain Names for a total amount of two hundred million dollars ($200,000,000);

6.      Pursuant to 15 U.S.C. § 1117(d), Coach is awarded statutory damages for each of the 573 Defendant Domain Names that incorporate Coach's Trademarks in the amount of one hundred thousand dollars ($100,000) for a total amount of fifty-seven million three hundred thousand dollars ($57,300,000);

7.      All monies currently held in Defendants' financial accounts, including monies held by PayPal, Inc. ("PayPal") and The Western Union Company ("Western Union"), shall be released

to Coach as partial payment of the above-identified damages and PayPal and Western Union are ordered to release to Coach the amounts from Defendants' accounts within ten (10) business days of receipt of this Order; and,

8.      In the event that Coach identifies any additional domain names owned by Defendants and linking to websites selling counterfeit Coach products, Coach may send notice of any contempt proceeding to Defendants by email at the email addresses identified in Schedule A.

It is further **ORDERED AND ADJUDGED:**

That the Court finds that there is no just reason for delay, and therefore, pursuant to Fed. R. Civ. P. 54(b), the Court expressly directs the entry of judgment on all rulings made by the Court shall operate as a final judgment as to Defendants.

IT IS SO ORDERED

Chicago, Illinois, this _15 th_ day of _October_ , 2012.

_____
U. S. District Judge Robert M. Dow Jr.

SIGNED on this _____ day of _____, 2012.

_____
U.S. CLERK OF COURT

9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| DECKERS OUTDOOR CORPORATION, | ) | |
| | ) | |
| | ) | Case No. 12-cv-1973 |
| Plaintiff, | ) | |
| | ) | **Honorable Sharon Johnson Coleman** |
| v. | ) | |
| | ) | |
| DOES 1-1,281 d/b/a the aliases identified on | ) | |
| Schedule "A", | | |
| | | |
| Defendants. | | |

## ORDER

This action having been commenced by Plaintiff Deckers Outdoor Corporation ("Deckers") against Defendants identified in the Complaint and Schedule A attached hereto and using at least the domain names identified in Schedule A and Scheudle A1 attached hereto (the "Defendant Domain Names");

This Court having entered upon a showing by Deckers, a temporary restraining order and preliminary injunction against Defendants which included a domain name transfer order and asset restraining order, and

Deckers having properly completed service of process on Defendants and none of the Defendants having answered the Complaint or appeared in any way, and the time for answering the Complaint having expired;

HEREBY FINDS that Defendants are liable for federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. 1125(d)), cyberpiracy (15 U.S.C. 1125(d)) and violation of the Illinois Uniform Trade Practices Act (815 ILCS § 510).

IT IS HEREBY ORDERED that Plaintiff's Motion for Entry of Default and Motion for Entry of a Default Judgment is GRANTED in its entirety and that Defendants are deemed in default and this Final Judgment is entered against Defendants.

IT IS FURTHER ORDERED that:

1. Defendants, their officers, agents, servants, employees, attorneys, confederates, and all person acting for, with, by, through, under or in active concert with them be permanently enjoined and restrained from:

    a. using Deckers' UGG Trademark or any reproductions, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademark;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine UGG branded product or any other product produced by Deckers, that are not Deckers' or not produced under the authorization, control or supervision of Deckers and approved by Deckers for sale under Deckers' UGG Trademark;

    c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Deckers, or sponsored or approved by, or connected with Deckers;

    d. further infringing Deckers' UGG Trademark and damaging Deckers' goodwill;

    e. otherwise competing unfairly with Deckers in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Deckers, nor authorized by Deckers to be sold or offered for sale, and which bear any Deckers' UGG Trademark or any reproductions, counterfeit copy or colorable imitation thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit UGG products; and

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademark.

2.  The domain name registries for the New Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within five (5) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Deckers' selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Deckers' selection.

3.  Those in privity with Defendants and with notice of the injunction, including any Internet search engines, web hosts, domain-name registrars and domain name registries that are provided with notice of the injunction, cease facilitating access to any and all websites

through which Defendants engage in the sale of counterfeit and infringing goods using the UGG Trademark.

4.   Pursuant to 15 U.S.C. § 1117(c)(2), Deckers is awarded statutory damages from each of the Defendants in the amount of two million dollars ($2,000,000) for use of a counterfeit UGG trademark on products sold through at least the Defendant Domain Names for a total award in the amount of two hundred million dollars ($200,000,000);

5.   Pursuant to 15 U.S.C. § 1117(d), Deckers is awarded statutory damages for each the 1,320 Defendant Domain Names that incorporate the UGG Trademark in the amount of one hundred thousand dollars ($100,000) for a total award of in the amount of one hundred thirty-one million and four hundred thousand dollars ($131,400,000);

6.   All monies currently restrained in Defendants' financial accounts, including monies held by PayPal, Inc. ("PayPal"), is hereby released to Deckers as partial payment of the above-identified damages and PayPal is ordered to release to Deckers the amounts from Defendants' PayPal accounts within ten (10) business days of receipt of this Order.

7.   Until Deckers has recovered full payment of monies owed to them by any Defendant, Deckers shall have the ongoing authority to serve this Order on any banks, savings and loan associations, or other financial institutions, including without limitation PayPal, (collectively the "Financial Service Provider") in the event that any new financial accounts controlled or operated by Defendants are identified.  Upon receipt of this Order, the Financial Service Provider shall immediately locate and restrain any newly discovered accounts connected to Defendants or Defendants' websites, and any funds in

such accounts shall be transferred to Deckers within ten (10) business days of receipt of this Order.

8. In the event that Deckers identifies any additional domain names owned by Defendants and linking to websites selling counterfeit UGG products, Deckers may send notice of any contempt proceeding to Defendants by email at the email addresses identified in Schedule A.

9. The ten thousand dollar ($10,000) bond including any interest minus the registry fee is hereby released to Deckers.

This is a Final Judgment.

June 29, 2012

Sharon Johnson Coleman
District Judge



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DECKERS OUTDOOR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11-cv-7970 |
| | ) | |
| v. | ) | **Honorable Ronald A. Guzman** |
| | ) | |
| LIYANGHUA et al., | ) | **Magistrate Martin C. Ashman** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## ORDER

This action having been commenced by Plaintiff Deckers Outdoor Corporation ("Deckers") against Defendants identified in the First Amended Complaint and Schedule "A" attached hereto and using at least the domain names identified in Schedule A attached hereto (the "Defendant Domain Names");

This Court having entered upon a showing by Deckers, a temporary restraining order and preliminary injunction against Defendants which included a domain name transfer order and asset restraining order, and

Deckers having properly completed service of process on Defendants and none of the Defendants having answered the Amended Complaint or appeared in any way, and the time for answering the Amended Complaint having expired;

HEREBY FINDS that Defendants are liable for federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. 1125(d)), cyberpiracy (15 U.S.C. 1125(d)) and violation of the Illinois Uniform Trade Practices Act (815 ILCS § 510).

1

IT IS HEREBY ORDERED that Plaintiff's Motion for Entry of Default and Motion for Entry of a Default Judgment is GRANTED in its entirety and that Defendants are deemed in default and this Final Judgment is entered against Defendants.

IT IS FURTHER ORDERED that:

1. Defendants, their officers, agents, servants, employees, attorneys, confederates, and all person acting for, with, by, through, under or in active concert with them be permanently enjoined and restrained from:

    a. using Deckers' UGG Trademark or any reproductions, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademark;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine UGG branded product or any other product produced by Deckers, that are not Deckers' or not produced under the authorization, control or supervision of Deckers and approved by Deckers for sale under Deckers' UGG Trademark;

    c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Deckers, or sponsored or approved by, or connected with Deckers;

    d. further infringing Deckers' UGG Trademark and damaging Deckers' goodwill;

    e. otherwise competing unfairly with Deckers in any manner;

    f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or

2

     inventory not manufactured by or for Deckers, nor authorized by Deckers to be sold or offered for sale, and which bear any Deckers' UGG Trademark or any reproductions, counterfeit copy or colorable imitation thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit UGG products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademark.

2.     The domain name registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within ten (10) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to MarkMonitor or a registrar of Deckers' selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to MarkMonitor or a registrar of Deckers' selection.

3.     Those in privity with Defendants and with notice of the injunction, including any Internet search engines, web hosts, domain-name registrars and domain name registries that are provided with notice of the injunction, cease facilitating access to any and all websites through which Defendants engage in the sale of counterfeit and infringing goods using the UGG Trademark.

4.     Pursuant to 15 U.S.C. § 1117(c)(2), Deckers is awarded statutory damages from each of the Defendants in the amount of two million dollars ($2,000,000) for use of a counterfeit UGG trademark on products sold through at least the Defendant Domain Names for a total award in the amount of two hundred and two million dollars ($202,000,000);

5.     Pursuant to 15 U.S.C. § 1117(d), Deckers is awarded statutory damages for each the 1,612 Defendant Domain Names that incorporate the UGG Trademark in the amount of one hundred thousand dollars ($100,000) for a total award of in the amount of one hundred sixty-one million and two hundred thousand dollars ($161,200,000);

6.     All monies currently restrained in Defendants' financial accounts, including monies held by PayPal, Inc. ("PayPal"), is hereby released to Deckers as partial payment of the above-identified damages and PayPal is ordered to release to Deckers the amounts from Defendants' PayPal accounts within ten (10) business days of receipt of this Order.

7.     In the event that Deckers identifies any additional domain names owned by Defendants and linking to websites selling counterfeit UGG products, Deckers may send notice of any contempt proceeding to Defendants by email at the email addresses identified in Schedule A.

8.     The one hundred and fifty thousand dollar ($150,000) bond including any interest minus the registry fee is hereby released to Deckers.

This is a Final Judgment.

DATED: ~~March~~ *APRIL* 11, 2012

*[signature]*

U.S. District Court Judge Ronald A. Guzman

4